IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALBERT J. SLINEY, Petitioner, | ) | |
| v. | ) | CA No.: 05-033ML |
| UNITED STATES OF AMERICA, Respondent. | ) | |

PETITIONER'S REBUTTAL TO GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255

## I. INTRODUCTION:

Petitioner, ALBERT J. SLINEY, (hereinafter 'Petitioner') hereby provides rebuttal to Government's Objections seeking denial of Petitioner's motion pursuant to 28 U.S.C. § 2255 (hereinafter '§ 2255 Motion').

## II. GOVERNMENT'S OBJECTION PRESENTS LAW AND ARGUMENT INAPPLICABLE TO PETITIONER'S SPECIFIC INEFFECTIVE ASSISTANCE CLAIM:

One of trial counsel's many errors cited in support of Petitioner's Sixth Amendment claim that counsel was incompetent, is trial counsel's failure to seek suppression of statements obtained in violation of the Fifth Amendment [not Fourth Amendment] as decided by the U.S. Supreme Court's ruling in Miranda v. Arizona, 384 U.S. 436 (1966). The Government has chosen to focus the brunt of the attack in its Objection primarily upon this specific error, by characterizing and arguing that Petitioner's Sixth Amendment claim (based upon Fifth Amendment and Miranda violations) should essentially be treated as if it were grounded upon a Fourth Amendment violation. Here the Government's



16

characterzation and argument are completely unfounded and misplaced.

A. The Goverment Provides No Factual Or Legal Basis To Characterize Petitioner's Sixth Amendment Claim As One Based On A Fourth Amendment Violation:

The Government's Objection reflects that Petitioner's trial counsel filed motions to suppress the evidence [which did not include any oral statements made by Petitioner] seized during the search of Petitioner's wife's apartment. Those motions were denied, leaving Petitioner with no valid issues concerning trial counsel's performance in seeking suppression on the only Fourth Amendment issues that trial counsel could possibly have raised. Furthermore, none of the conduct or omissions Petitioner cites in support of trial counsel's incompetence, could reasonably show that trial counsel failed to seek suppression of a violation of the Fourth Amendment.

B. The Government's Objection Addresses A Claim Petitioner Has Not Presented:

In its Objection the Government has presented an argument advancing the application of case law and legal principles, that apply where a Sixth Amendment claim is based upon a counsel's alleged incompetence in failing to seek suppression of evidence seized in violation of the Fourth Amendment. However Petitioner has not presented that particular claim, and the Government's argument does not address the Sixth Amendment claim Petitioner has presented. The basis for Petitioner's Sixth Amendment claim concerning counsel's failure to move for suppression is express and clear. As the Government concedes, trial counsel was aware of the incriminating statements Petitioner allegedly made and the Government's intended use of those statements against Petitioner.

As well trial counsel was also aware of the circumstances under which Petitioner made the alleged self-incriminating statements, and that such incriminating statements were obtained in violation of the Fifth Amendment and Miranda. Thus being aware of the foregoing, the basis for trial counsel to have sought suppression was a violation of the Fifth Amendment and not the Fourth Amendment. This being the case, the Government's argument that Petitioner has presented A Sixth Amendment claim that trial counsel was incompetent in failing to seek suppression of evidence seized in violation of the Fourth Amendment, and the Government's argument against that particular claim, is unfounded, misplaced and inapplicable.

III. PETITIONER'S MIRANDA CLAIM IS MERITORIOUS:

The Government contends that the record does not establish that Petitioner was in custody, as defined by law, when the alleged Miranda violation occurred. To the contrary, the record provides more than an adequate amount of fact to support that Petitioner was in custody necessary to establish a Miranda violation.

Although the Government's Objection attempts to down play the trial prosecutor outright admission of the fact that Petitioner had been taken into custody, BEFORE Petitioner allegedly made any self-incriminating statements. The Government implicitly offers "explanations" or "excuses" as to why the trial prosecutor "inadvertently" admitted that Petitioner had been taken into custody. However the explanations and excuses the Government offers conspicuously fall short of denying the factualness of trial prosecutor's admissions. Notwithstanding, the facts of the record and U.S. Supreme Court case law clearly establish that

Petitioner was in custody prior to making the alleged self-incriminating statements.

The record reflects that when asked, "When you came in, what did you do -- you came in with your raid jacket on. What did you do with the Defendant?". Detective Kevin O'Brien (Det. O'Brien) unequivocally stated, under oath, that, "He [Petitioner] was placed into custody. Secured [handcuffed]. (6/6/01: 22) (emphasis added). Here Det. O'Brien is not relating what he saw or heard, but rather what he himself actually did. The record further reflects that at the time Det. O'Brien had placed Petitioner in custody, a raid and search of the apartment, wherein Petitioner had been taken into custody, was being conducted by Det. O'Brien and at least six other police officers. The U.S. Supreme Court has found that the foregoing described conduct of Det. O'Brien, and the other assisting police officers, create a custodial situation.

To determine if an individual is placed into custody under Miranda, counsel must first consider the circumstances surrounding the interrogation. Next, counsel must determine whether, given those circumstances, would a reasonable person have felt he or she was not a liberty to terminate the interrogation and leave.. In most cases, an individual is placed into custody whenever law enforcement officials conduct a "formal arrest or RESTRAINT ON FREEDOM OF MOVEMENT OF THE DEGREE ASSOCIATED WITH A FORMAL ARREST." California v. Beheler, 463 U.S. 1121, 1125 (1983) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam) (emphasis added). A determination of whether officers placed an individual into custody under Miranda depends upon an evaluation of the circumstances

by a "reasonable" person in the suspects position. See Stansbury v. California, 511 U.S. 318, 323 (1994).

As well, the location and timing of the suspect's detention before questioning may provide strong indication of whether a defendant has been placed into custody. See Generally, Orozco v. Texas, 394 U.S. 324, 326-27 (1969) (stating that the suspect's interrogation in a boarding house [bedroom] at 4:00 a.m. indicated that officers placed the defendant into custody under Miranda. Further, the presence and placement of multiple officers during an interrogation session, and officer's brandishment of weapons, may also serve as strong indication of a person being placed into custody. See New York v. Quarles, 467 U.S. 649, 655 (1984) (respondent was in custody within the meaning of Miranda because at least four officers surrounded him during his interrogation in handcuffs).

In consideration of the foregoing U.S. Supreme Court case law, and the facts of the circumstances from which the claims presented in Petitioner's § 2255 Motion arose, it can not be disputed trial counsel should have known that Petitioner was in custody when Petitioner made the inculpatory statements used against Petitioner at trial.

After having established that Petitioner made statements while in custody, trial counsel should have sought to determine whether the incriminating statements were made in response to government interrogation. Interrogation is defined as "express questioning" or any activity by law enforcement officers "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300 (1980). The intent of the officers in

questioning the accused is one factor the court may consider in determining whether interrogation occurred.

It is uncontroverted that police officers were conducting a raid of the apartment where Petitioner was located, and that the basis for that raid was a search warrant that authorized the search for "evidence" linking Petitioner to an unsolved crime. The full intent of the officers involved in that raid were obvious, to secure evidence of Petitioner's guilt of criminal activity, and was also the reason for the question asked Petitioner in relation to the evidence sought. This fact is apparent in light of the exchange between the trial prosecutor and the Court during Petitioner's trial:

> MR. CHAFEE: The statement is, "Here it is. Here it is. Everything is my doing. She had nothing to do with it."
>
> THE COURT: <u>In response to what question</u>?
>
> MR. CHAFEE: The question was, "<u>SHOW US THE GUNS</u>."

(6/6/01: 27) (emphasis mine).

As the prosecutor blatantly acknowledged at that time, the incriminating statements made by Petitioner were IN RESPONSE TO A QUESTION [not a statement], by police, reasonably likely to elicit an incriminating response. Morover, the prosecutor's acknowledgments are corroborated by Det. Hawkins trial testimony:

> Q. Was Defendant Sliney asked a question by Corporal Tella?
>
> A. Yes, he was.
>
> Q. After Albert Sliney was asked that question, what did Sliney do?

MR. MURPHY: Objection, Judge.

THE COURT: Overruled.

Q. Did he say anything?

A. He said, "They're in there and they're mine."

(6/7/01: 16). Therefore, it can not reasonably be doubted that Petitioner incriminating statements were in response to interrogation, and not in response to a statement as suggested in Government's Objection.

Finally, where custody and interrogation have been established, the only question to be answered is whether Petitioner had been given Miranda warnings prior to being interrogated. This task was relatively easy for Petitioner's trial counsel, as that trial counsel had only to ask either Det. Hawkins, Det. O'Brien or Det. Tella, all of whom would admit that Petitioner was not miranderized when questioned.

When considering all of the foregoing in evaluating whether Petitioner's Miranda claims are meritorious, that evaluation must be made in accordance with the law as decided in Miranda. Miranda declared that custodial interrogation generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he does not otherwise do so freely." Miranda, 384 U.S. at 467. Therefore, the prosecution may not use statements elicited through custodial interrogation unless the use of procedural safegards guarantee that the accused has been informed of and has freely waived the Constitutional privileges of the Fifth Amendment. Miranda, 384 U.S. at 444-45. Under Miranda law enforcement officers must warn a defendant of the rights defined in support of the Fifth Amendment

protection against self-incrimination. Further, since the Court announced a Constitutional rule in Miranda, rather than an interpretation of federal statutes or judicial rules, principles of stare decisis mandate that no departures from precedent be taken unless supported by "special justification." U.S. v. International Bus. Mach. Corp., 517 U.S. 843 (1996).

Therefore based on all of the foregoing, Petitioner's Miranda claims are not only meritorious, trial counsel was grossly incompetent in failing to seek suppression of Petitioner's statements obtained in violation of the Fifth Amendment and Miranda.

## IV. PETITIONER'S CLAIMS OF VIOLATION OF DUE PROCESS ARE INDEPENDENT OF PETITIONER'S SIXTH AMENDMENT CLAIM

Although the factual circumstance from which Petitioner claims of violation of due process arise are the same as those upon which Petitioner's Sixth Amendment claim of ineffective assistance of counsel are founded, the facts and law to be used in determining these claims are distinctly different. Petitioner's Sixth Amendment claim will be decided upon the facts that Petitioner was in custody, when interrogated, not miranderized, and that trial counsel being aware of such facts counsel failed to move for suppression. The law governing how Petitioner's Sixth Amendment claim will be decided is Strickland v. Washington, 466 U.S. 668 (1984), Miranda, and their progeny.

However, Petitioner's due process claim will be decided upon the facts that the prosecutor constructively testified at Petitioner's detention hearing, statements obtained in violation of the Fifth Amendment and Miranda were used against Petitioner in the prosecutions' case-in-chief, Petitioner made an involuntary

confession which was used to convict Petitioner, and that trial counsel did not know the law necessary to afford Petitioner effective assistance of counsel. The law governing how Petitioner's due process violation claim will be decided, even though having its roots in the Fifth and Sixth Amendments, is founded upon different principles embodied in those amendments than those upon which the decisions of Strickland and Miranda were based. Thus the Government argument to any claim of ineffective assistance of counsel or a Miranda violation, do not in any meaningful manner address or dispel Petitioner's due process claims.

V. THE PUBLIC SAFETY EXCEPTION TO MIRANDA DOES NOT APPLY:

After seemingly coming to terms with the reality it faces, the Government finally provides an argument, although brief, which actually addresses the circumstances of Petitioner's Miranda issue.

The Government basically concedes that Petitioner was in custody and interrogated without first being mirandized (Government's Objection p. 18). But in a last gasp effort to prevent the correction of an obvious error, the Government presents what it wishes this court to accept as a viable exception for a clear Miranda violation.

The "public safety" exception to the Miranda rule which the Government suggests should be applied here, would simply be an acute misapplication of law in light of the circumstances to which that exception would be applied. In New York v. Quarels, the Court carved out the "public safety" exception to Miranda. See New York v. Quareles, 467 U.S. 649, 656 (1984). The Court concluded that "the need for answers to questions in a situation

posing as a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's 'privilege against self-incrimination.'" Id. at 658-59. This is so because such questioning is "not designed to obtain evidence of a crime," thus in situations which fit into this exception Miranda warnings are not required as no Fifth Amendment violation occurs. See U.S. v. Brady, 819 F.2d 884, 888 (9th Cir. 1987). However, Petitioner's situation does not fit squarely with this narrow exception to Miranda.

As the record reflects, the facts and circumstances of the situation involved in this instant matter clearly show there was no real or hypothetical threat to the publics safety, when the raid of Petitioner's wife's apartment was conducted. The facts are that when Petitioner's wife's apartment was raided that, (1) Petitioner was immediately located and handcuffed, (2) the the police officers conducting the raid immediately took control of the scene, (3) a preliminary sweep of the apartment had taken place, and (4) officer who questioned Petitioner as to whereabouts of guns had no reason to believe gun had been quickly discarded in public place. See United States v. Osorio, 877 F. Supp. 771 (DC Puerto Rico 1994); United States v. Rodriguez 931 F.Supp. 907 (DC Mass. 1996).

VI. CONCLUSION:

WHEREFORE, as the Government has failed to present to this Court any relevant or adequate opposition to Petitioner's § 2255 Motion, Petitioner's motion should be GRANTED in full.

April 22, 2005

Respectfully Presented,

ALBERT J. SLINEY, pro se
BOP Reg. No. 04965-070
FCI RAY BROOK
P.O. Box 9006
Ray Brook, New York 12977

## CERTIFICATE OF SERVICE

I, ALBERT J. SLINEY, the Petitioner in the foregoing PETITIONER'S REBUTTAL TO GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255, do so hereby affirm under the penalty of perjury, pursuant to 28 U.S.C. § 1746(1), that a true and correct copy of the same was properly packaged with adequate postage affixed thereupon, and was place in the inmate mail system to be forwarded to the following:

Zachariah Chafee
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Fleet Center
Providence, Rhode Island 02903

Office of the Clerk
U.S. Dist. Court
Dist. of Rhode Island
2 Exchange Terrance
Providence, RI 02903

So done this 22 day of April 2005

Respectfully Presented,

ALBERT J. SLINEY, pro se
BOP Reg. No. 04965-070