# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

ALBERT J. SLINEY         :

                   :

   vs.               :         C.A. No.  05-033-ML

                   :

UNITED STATES OF AMERICA   :

## MEMORANDUM AND ORDER

Mary M. Lisi, United States District Judge.

Albert J. Sliney has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("motion to vacate").  For the reasons that follow, that motion is denied.

## BACKGROUND AND TRAVEL

The instant motion to vacate stems from Sliney's conviction and sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e).  See Judgment dated Nov. 19, 2001, United States v. Albert J. Sliney, CR 01-012-ML.

Sliney was arrested on August 6, 2000, as Rhode Island State Police executed a search warrant at a second-floor apartment located at 101 Whitehall Street in Providence.  The search warrant was obtained on the basis of a tip by a confidential informant that there were stolen firearms at the Whitehall apartment and authorized a search of the apartment for the weapons in question and for other suspected stolen property.  (See Transcript of Initial Appearance conducted on January 30, 2001 ["1/30/01 Tr."] at 5.)  Prior to entering the premises, police had surveilled the property for several hours, during which no one was seen entering or leaving.  (See Transcript of Jury Trial, Day One, June 6, 2001 ["6/6/01 Tr."] at 42-43.)

At approximately 5:15 pm, six to eight state police officers entered the apartment and found Sliney in a bedroom in his underwear and his wife, Carla Sliney in the kitchen, fully clothed. (Id. at 20.) Sliney appeared groggy, as if he had just awoken. Sliney was taken into custody and handcuffed (Id. at 22, 73.), but was not given Miranda warnings. When one of the officers, Corporal Tella, requested Sliney to "show us the guns [or weapons]," Sliney promptly directed the agents to a closet containing the two weapons that were the subject of the search warrant and stated, "Everything is mine [or my doing]. She [Carla] had nothing to do with it." (Id. at 31).[1] State police officers thereupon seized two firearms -- a Remington Arms .20 gauge shotgun and a .22 caliber bolt-action rifle. In the kitchen, police found and seized ammunition for a .20 gauge shotgun. (Id. at 31-32.) The officers also found two pieces of mail addressed to Sliney at the apartment's address as well as male and female clothing in the bedroom where Sliney was discovered. (Id. at 35-37) Subsequently, both Sliney and Carla were taken to police headquarters.[2]

The Whitehall apartment was rented in the name of Carla Sliney, Sliney's wife. (Id. at 76-78.) Sliney was observed living there with Carla and a child; he spoke with the landlady on the apartment telephone and from time to time paid the monthly rent. (Id. at 77-79.)

After his arrest Sliney was charged and prosecuted in Rhode Island state court. On January 30, 2001 Sliney was arrested on a federal complaint which charged that he had possessed

---

[1]  The words spoken by Sliney and his actions in directing the agents to the closet are collectively referred to herein as Sliney's "statements." See United States v. Banks, 405 F.3d 559, 566 (7th Cir. 2005) (defendant's words and conduct both constituted admissions that he was owned of drugs stored in another's apartment).

[2]  It is not clear from the record whether Carla Sliney was subsequently charged with any offense, but that circumstance is immaterial to the instant ruling.

the firearms while a convicted felon, in violation of 18 U.S.C. § 922(g). On January 31, 2001, Sliney appeared before the magistrate judge for a detention hearing. During that hearing, the Government's attorney recited the key facts of the case, representing that during the search police "told [Sliney] what they were there for, to look for various stolen property, and he said everything here is mine, and then went around and showed them where in the house the various stolen property was located, including the guns." (Transcript of Detention Hearing conducted on January 31, 2001 ["Detent. Hrg. Tr."] at 12.)

On February 21, 2001, a federal grand jury returned a one-count indictment charging that Sliney possessed the two guns as a convicted felon, in violation of 18 U.S.C. § 922(g) and § 924(e). At Sliney's arraignment on February 28, 2001, the Court ordered all pretrial motions to be filed by April 2, 2001. See Pretrial Order and Arraignment Order at 5.

Throughout the initial criminal proceedings and trial in this Court, Sliney was represented by court-appointed counsel, William J. Murphy.[3] On June 4, 2001 with leave of this Court, Attorney Murphy filed two motions to suppress on behalf of Sliney. The first motion asserted that the search warrant was not supported by probable cause; the second averred that the affiant who signed the search warrant affidavit had not spoken directly with the informant who supplied

---

[3] Prior to trial, Sliney filed a *pro se* motion to dismiss his appointed counsel and to appoint new counsel. At hearing, the Court found the motion to be primarily based on Sliney's unhappiness with the failure of Attorney Murphy to obtain Sliney's conditional release prior to trial. Based on this finding, this Court denied the *pro se* motion. (See Transcript of Hearing on Defendant's Motion To Dismiss His Counsel conducted on May 2, 2001 at 5.)

Thereafter, on the day before trial was scheduled to begin, Attorney Murphy filed a motion to withdraw as Sliney's counsel because Sliney had threatened to file a complaint with the Disciplinary Board of the Rhode Island Supreme Court, due to differences concerning trial preparation and strategy. (See Transcript of Hearing on Motions to Withdraw and Suppress conducted on June 5, 2001 ["6/5/01 Tr."] at 3-4.) During hearing on that motion, however, the Court was advised that Attorney Murphy and Sliney had engaged in further discussions and that Sliney consented to have Attorney Murphy represent him at trial. (See id. at 4-5.) For that reason, this Court denied the motion to withdraw. (Id. at 5.)

the key information.  Neither motion sought to suppress Sliney's statements about the guns, or

his actions directing the agents to the guns, at the time of his arrest.  After hearing, this Court

denied both motions.  (See Transcript of Suppression Hearing conducted on June 5, 2001 at 12-

15).

    At trial, during the testimony of the Government's first witness, Detective Kevin

O'Brien, O'Brien was asked concerning statements made by Sliney at the time he was taken into

custody.  Attorney Murphy promptly objected.  A bench conference ensued, at which counsel

claimed there was no mention of any statement by Sliney in the discovery he received in Sliney's

state court prosecution and orally moved to suppress evidence of any such statements.  (6/6/01

Tr. at 23-25.)  Counsel further stated that, for tactical reasons, he had not filed any separate

request for discovery in the federal firearms case.  (Id. at 24.)  The Government's attorney

acknowledged that at the time of his incriminating statements Sliney was in custody and had not

been given any Miranda warnings but noted that he (the Government attorney) had made

reference to Sliney's statements in open court at Sliney's detention hearing.  (Id. at 25-26.)  After

a brief recess, this Court denied the oral motion to suppress because it was untimely, noting that

defense counsel was on notice of Sliney's statements in light of the Government attorney's

reference to them at the detention hearing.  (Id. at 27-29.)[4]

    Detective O'Brien thereupon testified, over objection of defense counsel, that upon being

addressed by Corporal Tella, Sliney directed the agents to a closet containing the two firearms

---

[4]    The Court also reiterated that, in view of the agreement by all parties at the outset of trial not
to present evidence on -- or to refer to -- the fact that the firearms had been stolen during a burglary the
previous night, there would be no reference by either counsel or witnesses to any items seized other than
the two firearms and ammunition.  (6/6/01 Tr. at 27.)

4

and stated, "Everything's my doing. She [Carla Sliney] had nothing to do with it." (Id at 30-31.)

A second state police detective present at the arrest, Detective Kevin Hawkins, also testified at trial that Sliney was discovered in bed in the bedroom and that in response to a question by Corporal Tella,[5] Sliney directed the agents to the hall closet, pointed and stated, "They're in there and they're mine." (See Transcript of Jury Trial, Day Two, June 7, 2001 ["6/7/01 Tr."] at 16, 21-22.) Hawkins, O'Brien and Tella were present with Sliney at the hall closet when the guns were discovered.

Other evidence adduced at trial revealed that the apartment was small; that Sliney and his wife had occupied it for several months (see 6/6/01 Tr. at 76-77); that Sliney's wife was the tenant of record at the apartment (id. at 76); that Sliney sometimes paid the rent (id. at 78); and that during the search police also found adult men's clothing and two pieces of mail addressed to Sliney at the apartment's address (id. at 35-37). The landlady, who together with her husband owned and rented the Whitehall apartment, testified that Sliney's wife Carla was the tenant of record and that she observed Sliney and a child living there with Carla. (Id. at 77-79.) She testified that she had spoken with Sliney on the apartment's telephone and that Sliney on occasion paid the rent, but she could not say how recently Sliney had been at the apartment prior to the date of arrest. (Id. at 78-79, 83-84.)

Defense counsel vigorously cross-examined both police witnesses and elicited *inter alia* that there was no mention of either Sliney's incriminating statements or the mail addressed to Sliney found at the apartment in any of the police reports or other records of the search and arrest, or in Detective O'Brien's Grand Jury testimony (see e.g. 6/6/01 Tr. at 44, 48, 55-58), and

---

[5] For reasons not disclosed on the record, Corporal Tella did not testify at trial.

that Detective Hawkins did not make any written report of that search and seizure. (See 6/7/01 Tr. at 28.)

Counsel presented Sliney's mother as a witness, who testified that Sliney had been residing at her home and that she had driven him to Carla Sliney's apartment at approximately noon time on the day of arrest. (Id. at 43-44.) In his closing argument, defense counsel challenged various factual discrepancies in the Government's case, including the accounts of Sliney's statements and actions in directing police to the guns in the closet, highlighted the omissions in the police reports and records, and also noted that Corporal Tella did not testify. (See 6/7/01 Trial Tr. at 66-73.) He also challenged the Government's proof of Sliney's occupancy of the apartment and of the origin of the guns. (Id. at 60-65.)[6]

The jury found Sliney guilty as charged. On November 13, 2001 this Court sentenced Sliney, pursuant to the provisions of the Armed Career Criminal Act, to 210 months imprisonment, the low end of the pertinent Guideline range, followed by five years of supervised release.

Sliney appealed and was represented by new appointed counsel. Appellate counsel initially filed an Anders brief, citing a lack of nonfrivolous grounds for appeal. The Court of Appeals rejected the Anders brief and directed the parties to address: (1) whether counsel's failure to file a pretrial motion to suppress Sliney's statements at the time of arrest (that the guns were his and that his wife had nothing to do with it) amounted to ineffective assistance of counsel; and (2) whether this issue was sufficiently developed to be decided on direct appeal. See United States v. Albert Sliney, Dkt. No. 01-2644, Order dated February 3, 2003 (1st Cir.). After

---

[6]   Sliney did not dispute that at the time of arrest he had a prior felony record.

reviewing the briefing, the Court of Appeals determined that it was unable to decide the ineffective assistance claim on direct appeal, stating that should Sliney wish to pursue such a claim, he should bring a motion pursuant to 28 U.S.C. § 2255. See id., Judgment dated January 26, 2004. The Court of Appeals otherwise affirmed Sliney's conviction and sentence. Id. Sliney did not seek any further review, and his appeal became final on or about April 25, 2004.

On January 28, 2005 Sliney filed the instant motion to vacate sentence. In his motion and supporting papers, Sliney claims that his trial counsel rendered ineffective assistance due to counsel's failure (1) to file a pretrial a motion to suppress Sliney's statements made at the time of arrest and (2) to call certain defense witnesses at trial. Sliney further claims that the Government's use of those statements against Sliney at his detention hearing and at trial violated due process, as no Miranda warnings were provided to him. See Petition/Memorandum of Law in Support of Petition pursuant to 28 U.S.C. § 2255 ("Pet. Memo"). The Government has responded and Sliney has filed a reply to the Government's response.[7]   The case is ready for decision.[8]

---

[7]   With his motion to vacate, Sliney filed a motion to be provided with transcripts of the grand jury proceedings leading to his indictment in the underlying criminal case. This Court denied that motion. Sliney subsequently filed a "Motion for Relief from Judgment and Order" requesting this Court to reconsider its denial of the request for grand jury transcripts, which was opposed by the Government. This Court denied that motion – in part on the Court's understanding that Attorney Murphy had previously provided Sliney with a complete copy of his criminal file. An interlocutory appeal of that denial was taken by Sliney to the Court of Appeals and currently remains pending. The issues raised by that appeal do not affect this Court's ruling on the instant motion to vacate.

[8]   Sliney requests an evidentiary hearing on his claims. However, as discussed infra, no hearing is required in connection with any issues raised by his motion to vacate, as the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing is required where the district judge is thoroughly familiar with the case).

## DISCUSSION

Title 28 U.S.C. §2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255, ¶ 1.

Generally, the grounds justifying relief under §2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotes omitted).

A motion under § 2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice"– or, alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604 (1998) (citations omitted). See also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

With the foregoing principles in mind, the Court reviews Sliney's claims.

I.    Ineffective Assistance Claims

Sliney claims that his trial counsel rendered ineffective assistance due to counsel's failure (1) to file a pretrial a motion to suppress Sliney's statements and actions at the time of his arrest and (2) to call certain defense witnesses at trial and otherwise investigate certain defenses.

Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), a defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate two criteria:

(1)    that his counsel's performance "fell below an objective standard of reasonableness," and

(2)    "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."

Id., 466 U.S. at 688, 694, 125 S.Ct. at 2064, 2068.

The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance.  Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice.  Dure v. United States, 127 F. Supp.2d 276, 279 (D.R.I. 2001), citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir.1993).

In assessing the adequacy of counsel's performance:

> [T]he court looks to "prevailing professional norms" . . . A flawless performance is not required.  All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.  [Citations omitted.]

Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998), quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688.  This means that the defendant must show that counsel's advice was not "within the range of competence demanded of attorney in

criminal cases." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985).

Under the second prong of the Strickland test, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068 (emphasis added).

In short , a court must not only find that defense counsel's performance was deficient, but that it was so prejudicial as to undermine confidence in the outcome of the trial, and the fundamental fairness of the result. Lema, 987 F.2d at 51 (internal quotation marks omitted), citing Strickland, 466 U.S. at 693-694 and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838 (1993).

A.   Statements at Arrest

Sliney first claims that his trial counsel's failure to file a timely pretrial motion to suppress his unwarned incriminating statements at arrest concerning the guns at issue constituted objectively deficient performance and that he was prejudiced by the use of those statements at trial. In connection with this claim, Sliney points to counsel's failure to request formal discovery from the Government prior to trial, particularly in light of the Government attorney's express references to those statements during Sliney's detention hearing, at which trial counsel was present. (Pet. Memo at 11, 15-16)

The Court first analyzes whether Attorney Murphy's failure to file a pretrial motion to suppress Sliney's statements constituted objectively deficient performance. This in turn depends on (1) what Attorney Murphy knew, in light of his "tactical" decisions; and (2) whether a motion to suppress would likely have been successful.

-10-

1.    Attorney Murphy's Knowledge and Tactical Decision

As to the first inquiry, the question is whether counsel's apparent lack of awareness of the Government's intention to use Sliney's statements against him at trial was itself the product of deficient performance. The record discloses that at trial, as the Government's first witness was about to testify as to Sliney statements concerning the guns, Attorney Murphy objected and, in the course of a bench conference on that objection, orally moved to suppress any evidence of Sliney's statements. Attorney Murphy indicated he was not aware of the Government's intent to use Sliney's statements at trial, as such statements were not contained in any of the police records or other information that he had received in connection with the state prosecution of Sliney nor in the grand jury minutes he had reviewed. The Government's attorney responded that Sliney's statements were specifically mentioned at his detention hearing. Attorney Murphy indicated, without elaboration, that "for tactical reasons" he had not requested discovery in the federal prosecution and reiterated that the statements had not been produced in any discovery he obtained in Sliney's state court prosecution. In denying the oral motion to suppress, this Court observed that Attorney Murphy "was present at that detention hearing representing Mr. Sliney" and that "at the very least, [counsel] was on notice that such a statement . . . was made [by Sliney] and was of an incriminating nature." (6/6/01 Tr. at 28.)

Indulging the "strong presumption" of correctness to which counsel's tactical decisions concerning investigation and strategy are entitled, Strickland, 466 U.S. at 689, this Court cannot say that counsel's decision to refrain from requesting discovery from the Government, in and of itself, constitutes objectively deficient performance. An attorney's trial performance is accorded deferential review and a court should not assess the attorney's performance based on hindsight.

Strickland, 466 U.S. at 690-691. In this Court's view, Attorney Murphy's decision to forego discovery for tactical reasons, does not fall below the "wide range of reasonable professional assistance" that an attorney may provide a criminal defendant. Lema, 978 F.2d at 51. While in hindsight, a request for discovery would likely have put counsel on notice of the Government's intent to use Sliney's statements at trial, hindsight is not the measure to use in judging attorney performance. See Strickland , 466 U.S. at 690, 125 S.Ct. 2064.

Rather, viewing that tactical decision "from counsel's perspective at the time," Strickland, 466 U.S. at 689, 104 S.Ct. at 2068, it was not unreasonable, given the absence of any mention of Sliney's statements in the police reports and other records that Attorney Murphy possessed. See United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir.1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (citing United States v. Bosch, 584 F.2d 1113 (1st Cir.1978)).

Further, this Court cannot say that Attorney Murphy's failure to "pick up on" the Government attorney's single reference in the detention hearing to Sliney's statements and actions at arrest was deficient. In preparing for trial, counsel was understandably focused on the materials contained in the police report, the search warrant, inventory and grand jury minutes which counsel did have in his possession -- all of which constituted the substance of the Government's case against Sliney.

2.    Likelihood of Success of Pretrial Motion To Suppress

The Court also examines whether a pretrial motion to suppress would likely have been successful, in light of the legal principles involved. The self incrimination clause of the Fifth Amendment provides: "No person shall be compelled in any criminal case to be a witness against

himself." U.S. Constitution, amend. V.  In <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant" against that defendant, unless the defendant is first given warnings designed to safeguard his Fifth Amendment rights against self-incrimination.[9]  In <u>Dickerson v. United States</u>, 530 U.S. 428, 120 S.Ct. 2326 (2000), the Supreme Court reaffirmed this ruling and made clear that the <u>Miranda</u> rule is of constitutional magnitude. <u>Id</u>. at 432.

In assessing whether a pretrial motion to suppress would likely have been successful in Sliney's case,  the Court looks at whether Sliney's statements were the product of custodial interrogation, so as to be inadmissible as products of a <u>Miranda</u> violation.  For <u>Miranda</u> purposes, interrogation is "express questioning or its functional equivalent." <u>United States v. Genao</u>, 281 F.3d 305 (1st Cir. 2002), <u>quoting</u> <u>Rhode Island v. Ennis</u>, 446 U.S. 291, 300-301, 100 S.Ct.1682 (1980).  That is, "interrogation occurs only when police conduct is reasonably likely to elicit an incriminating response from the suspect.  Moreover, words or actions normally incident to arrest and custody do not constitute interrogation." <u>Id</u>. (internal quotation marks omitted).

In <u>Genao</u> the Court of Appeals found that a defendant's voluntary statement made pursuant to a single statement by police was not the product of custodial interrogation and therefore not subject to <u>Miranda</u> warnings. <u>See</u> <u>Id</u>. at 310-311.  In that case, a team of eight to ten police officers, executing a search warrant, found drugs and guns in an unoccupied third-floor apartment directly above defendant's apartment, to which defendant had access.  One of the

---

[9]  These warnings are that the suspect has a right to remain silent, that any statements made may be used against the suspect, that the suspect has a right to an attorney and if the suspect cannot afford an attorney, one will be appointed for him or her. <u>Miranda</u>, 384 U.S. at 467-474, 86 S.Ct. 1602.

officers then approached defendant with the seized drugs, stating, "We've got a problem here" --
to which the defendant immediately replied, "Everything's mine. I don't want my wife to get in
trouble." Id. at 308. The officer then gave defendant his <u>Miranda</u> warnings, after which
defendant repeated his statement that everything was his and that he did not want his wife to get
in trouble. Id. His pretrial motion to suppress both his pre-<u>Miranda</u> and post-<u>Miranda</u> statements
was denied, and he was convicted.

On appeal Genao challenged *inter alia* the denial of his motion to suppress. The Court of
Appeals found that his pre-<u>Miranda</u> statement was not the product of a <u>Miranda</u> violation and
upheld the denial of the motion to suppress., stating that "[i]n light of the circumstances here,
[the officers's] remark to Genao was not the functional equivalent of questioning, nor was it
reasonably likely to elicit an incriminating response." Id. at 310   The Court of Appeals also
found that Genao's response to a separate query concerning whether the third-floor apartment was
occupied was likewise admissible, since the "officer's question was 'much more of an
informational inquiry incident to the arrest as opposed to a query designed to induce an
inculpatory remark.'" Id. at 311, n.5 (<u>quoting</u> <u>United States v. Conley</u>, 156 F.3d 78, 84 (1st
Cir.1998)).

In the instant case, as in <u>Genao</u>, police officers were executing a search warrant at a
residence.  Upon entering the apartment, the officers confronted Sliney, and he was taken into
custody.  Corporal Tella then addressed Sliney concerning the guns.  The words used by Corporal
Tella ("Where are the guns?" or words to that effect) were more specific than those used in
<u>Genao</u> ("We have a problem here.").  On the other hand, there were six to eight officers in the
apartment, executing a search warrant under somewhat chaotic circumstances, and Corporal

-14-

Tella may well have been asking the question for the purpose of seizing the contraband rather than getting Sliney to incriminate himself. In response to that single question or statement, Sliney directed the officers to the closet where the guns were located and without further prompting stated, "Everything's mine. My wife had nothing to do with it."

After reviewing the record and arguments of both Sliney and the Government, this Court finds that the issue whether Corporal Tella's words to Sliney[10] should be construed as an "informational inquiry" or as "a query intended to elicit an incriminating response," Conley, 156 F.3d at 84, presents a very close question. On balance, however, it appears that the inquiry -- which was narrowly focused and was asked while Sliney was in custody and handcuffed -- could well be taken to constitute custodial interrogation. If so, then Sliney's response, although made voluntarily and without hesitation, would be deemed the product of a Miranda violation. It follows that a pretrial motion to suppress that response brought by counsel would likely have succeeded.

In view of the foregoing, this Court assumes that Attorney Murphy's failure to file a pretrial motion to suppress Sliney's statement constitutes objectively deficient performance under the first prong of Strickland.[11]

---

[10]   Corporal Tella's precise question to Sliney was not specified in the testimony, in view of the parties' stipulation to exclude any reference to the burglary of the firearms. See note 4, supra. The question was described variously as "We're here looking for the guns" (6/6/01 Tr. at 24) or "Show us the guns." (6/6/01 Tr. at 27) or "Where are the guns?" (6/7/01 Tr. at 8) or some variation of this. The slight variations are immaterial to the Court's ruling here, as it appears that Corporal Tella's words in any event took the form of a request rather than a statement.

[11]   The Government contends that Sliney's unwarned statements were admissible under the "public safety" exception to the Miranda rule. Under that exception, police need not provide Miranda warnings prior to asking questions where there is an objectively reasonable need to protect the public or police from any immediate danger. See New York v. Quarles, 467 U.S. 649, 656-659, 104 S.Ct. 2626 (1984) (recognizing exception). However, given that at the time he was asked about the guns, Sliney was

3.    Prejudice

Even if Attorney Murphy's performance is deemed deficient, however, it does not constitute ineffective assistance unless it was prejudicial to Sliney. In this respect, the Court looks at whether the result of the proceeding would have been different but for the attorney's error, or put another way, whether counsel's performance "was so prejudicial as to undermine confidence in the outcome of the trial . . . and the fundamental fairness of the result. Lema, 987 F.2d at 51 (citing Strickland, 466 U.S. at 693-694 and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838 (1993)). Here, the question turns on how critical Sliney's statements were to the Government's case.

At trial there was a great deal of evidence, apart from Sliney's statements, tending to show that Sliney had constructive possession of the firearms. Detectives O'Brien and Hawkins testified (1) that the apartment had been under surveillance for several hours prior to the entry and search and that officers had observed no one coming and going;  (2) that the apartment was small and the guns were the only items in a centrally-located hall closet a few steps from the bedroom; (3) that Sliney was found in bed in his underwear waking up and there was adult male clothing in the bedroom; and (4) that the officers found and seized items of mail addressed to Sliney at the apartment. The evidence also showed that Sliney and Carla were the only two persons in the apartment at the time of the search; that the apartment was leased in the name of Sliney's wife; and that Sliney on occasion paid the rent to the landlady.

---

in handcuffs, his wife was in custody and there were no other persons in the apartment, it does not appear that this exception can be invoked here. See United States v. Cherino, 418 F.Supp.2d 93, 94-95 (E.D.N.Y. 2005) ("public safety" exception to Miranda not applicable where defendant was asked question concerning whereabouts of other guns while handcuffed in his home with several law enforcement officers present).

The foregoing evidence was sufficient to permit the jury to find that Sliney (a) resided at and/or exercised control over the apartment; (b) was at the apartment on the day of arrest since at least noon time; (c) was fully aware of the presence of the guns in the apartment; and (d) exercised control over both the apartment and the guns – and thus that he "constructively possessed" those guns.[12]

It follows that because there was substantial evidence, apart from Sliney's incriminating statements, showing that Sliney knowingly possessed the firearms at issue, the outcome would have been the same, even if counsel had successfully precluded evidence of those statements. Further, given Attorney Murphy's vigorous defense on these points, the trial and the result was fundamentally fair. Thus, there was no prejudice to Sliney. See Strickland, 466 U.S. at 694.

B.    Failure to Call Witnesses

Sliney claims that his trial counsel rendered ineffective assistance by failing to interview and/or call two witnesses – his sister, Debbie Correscoza, and Carla Sliney -- to testify on his behalf at trial. "The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir.1993). Moreover, "[t]he decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case." Id. at 55.

Sliney asserts that Correscoza would have testified, *inter alia* (1) that Sliney had spent the entire day before his arrest -- the day of the burglary -- with her; (2) that Sliney had received

---

[12]    The jury was specifically instructed on the distinction between actual and constructive possession as part of this Court's instructions regarding the elements that the Government had to prove for the offense charged. (See 6/7/01 Tr. at 89-90.)

telephone calls on the morning of his arrest from his step-brother Gary Bouffard and from Carla Sliney; and (3) that Sliney was living at his mother's house prior to the arrest . (See Pet. Memo at 26-27.) However, such testimony would have been either excludable or unhelpful.

Correscoza's testimony concerning Sliney's whereabouts the day before his arrest would have been irrelevant, as by agreement there was no evidence adduced at trial that the guns had been stolen, and may well have unnecessarily raised a collateral issue. Similarly, her testimony as to whether Bouffard requested Sliney for assistance as to the stolen firearms would have been excluded in light of the stipulation to avoid mention of the burglary – and if not excluded, would have suggested Sliney's involvement with the guns – and thus would have been potentially incriminating, rather than helpful, to Sliney. The testimony concerning contents of the telephone calls received from Bouffard and Carla Sliney would have been clearly excludable as hearsay, given her lack of participation in either conversation. See Fed.R.Evid. 801. Further, no amount of witness investigation would have changed the foregoing circumstance.[13] Correscoza's testimony that Sliney was residing with his mother would have been superfluous in view of the direct testimony by Sliney's mother on that same point.

Likewise, any testimony by Carla favorable to Sliney would, as Sliney concedes (Pet. Memo, note 9, 29-30 at 30), be subject to substantial impeachment by the Government in view of her statement incriminating Sliney given to police on the date of arrest. Moreover, that subsequent statement, while purporting to assist Sliney, was inconsistent in several respects with

---

[13]   These considerations also dispose of Sliney's further argument (Pet. Memo at 31-32) that counsel was deficient in failing to investigate whether he had been "set up" by Gary Bouffard.

the testimony of the police officers involved in Sliney's arrest.[14]  It follows that Attorney Murphy

could reasonably have chosen not to call Carla as a witness on Sliney's behalf under those

circumstances.  Given these considerations, this Court cannot say that counsel's decision not to

interview or call either Correscoza or Carla Sliney as defense witnesses constitutes objectively

deficient performance that prejudiced Sliney at trial.  See Lema, 987 F.2d at 54.

### C.   Evidence Rebutting Occupancy

Sliney further alleges that his counsel was ineffective in failing to adequately investigate

and present evidence that he was not living with his wife at the time of arrest and was only

visiting the apartment that day.  (Pet. Memo at 22-24.)  He points to his counsel's failure to

contact or call a representative of the Rhode Island Department of Children, Youth and Families

("DCYF") concerning the location of Sliney's residence during the period immediately prior to

the date of his arrest.

The First Circuit has noted that:

> "[S]trategic choices made after less than complete investigation are
> reasonable precisely to the extent that reasonable professional judgments
> support the limitations on investigation. In other words, counsel has a duty to
> make reasonable investigations or to make a reasonable decision that makes
> particular investigations unnecessary. In any ineffectiveness case, a particular
> decision not to investigate must be directly assessed for reasonableness in all
> the circumstances, applying a heavy measure of deference to counsel's
> judgments."

Dugas v. Coplan, 428 F.3d 317, 327-328 (1st Cir. 2005) (quoting Strickland, 466 U.S. at

690-691, 104 S.Ct. 2052)

---

[14]  For example, Carla's statement asserts, in contrast to the officers' testimony (1) that Gary
Bouffard returned briefly to the Whitehall apartment at approximately 2:30 p.m on the day of arrest;  (2)
that Sliney was in the bathroom, rather than the bedroom, when officers entered the apartment and took
him into custody; and (3) that she, rather than Sliney, informed the agents of the location of the guns in
the closet.  (See Pet. Memo, Attachment B at 1-2).

Applying these principles, this contention is readily disposed of. First, contrary to Sliney's assertions, Attorney Murphy did challenge the Government's assertion that Sliney lived at the apartment where he was arrested. He challenged and highlighted the failure of the Government to include the mail items in the police inventory and police reports. He presented the testimony of Sliney's mother, who testified that Sliney was residing with her at the time of his arrest. Moreover, the DCYF documents addressed to Sliney at his mother's address in and of themselves would not have disproved his constructive possession of the guns and may well have opened collateral issues not in Sliney's best interest. Sliney has otherwise made no showing that counsel's decision not to contact DCYF was unreasonable or otherwise "outside the wide range of professionally competent assistance," given the deference to an attorney's tactical decisions at trial. Strickland, 466 U.S. at 690. Thus, this claim fails.

In short, a defendant is entitled to a fair trial and effective assistance of counsel, not a perfect trial and flawless representation. See Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999), citing Scarpa, 38 F.3d at 8. Here, Sliney received a fair trial and vigorous representation in his underlying criminal case, notwithstanding that he was convicted. Thus, this Court finds that Sliney's ineffective assistance claims cannot prevail.

II.    Due Process Claims

Sliney raises several due process claims in his petition. He claims that he was denied due process by the use of his incriminating statements against him at his detention hearing and at trial, where such statements were "involuntarily given." He further asserts that he was denied due process because his trial counsel "did not know the law" and therefore could not protect his constitutional rights.

As a threshold matter, the Court notes that all of these due process claims except the one

concerning counsel could -- and should -- have been made on direct appeal.  Because a motion under § 2255 is not a substitute for a direct appeal, see Frady, 456 U.S. at 165, Sliney is precluded from reasserting those claims here, absent a showing of cause and prejudice.  See Bousley, 523 U.S. at 622. Even if considered, however, these claims, as well as Sliney's final due process claim, lack merit for the reasons that follow.

Sliney first claims that he was denied due process of law because during his detention hearing conducted before Magistrate Judge David Martin, the Government's attorney described the incriminating statements made by Sliney at the time of his arrest, which rendered the Government's attorney a witness.

This claim fails for at least two reasons.  First, the factual basis of Sliney's claim is not accurate.  As the Government points out, the Government attorney's reference to Sliney's statements at the detention hearing were made in the course of argument, and the statements were neither offered nor considered as "evidence" against Sliney.  (See Detent. Hrg. Tr. at 12.) Second, under well-established case law the Magistrate Judge could consider the Government attorney's description of Sliney's statements at the detention hearing in connection with determining whether Sliney should be released prior to trial.  See United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) ("[M]agistrates and judges traditionally have been permitted to base their decisions, both as to release conditions and as to possible detention, on hearsay evidence, such as statements from the prosecution or the defendants about what they can prove and how.").

Sliney's second and third due process claims, taken together, assert that the obtaining of, and subsequent use against him at trial, of his unwarned statements concerning the guns violated

his due process rights.  These claims likewise fail.

In determining whether voluntary statements were obtained from a defendant in violation of the Due Process Clause, a court must examine "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation."  See United States v. Faulkingham, 295 F.3d 85, 90 (1st Cir. 2002)(no violation of due process in obtaining defendant's statement, where totality of surrounding circumstances showed that statement was not coerced and defendant was willing to cooperate and speak freely) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226-27, 93 S.Ct. 2041 (1973)).  Here, the evidence showed that Sliney's statements were voluntarily made in response to a single question from law enforcement and that he spoke freely to the officers concerning the location of the guns, without extensive questioning by them.  Although six to eight officers were present in the apartment, this was not Sliney's first brush with the law or with being detained or arrested, given his lengthy prior criminal record.  In these circumstances, the obtaining of Sliney's unwarned statements did not violate due process.  See Faulkingham, 295 F.3d at 90; Genao, 281 F.3d at 310  (confession made after officer stated to defendant "We have a problem here" was not coerced in violation of due process).

Similarly, the subsequent use of Sliney's statement at trial did not violate due process.  No motion to suppress the statements was made before trial, and the Court denied Sliney's oral motion to suppress made mid-trial by counsel.[15]  Evidence of the statement was otherwise

---

[15]    The correctness of this Court's denial of the oral motion to suppress is not raised in the instant motion to vacate and is not at issue here.  The Court notes, nevertheless, that under the Federal Rules  motions to suppress evidence must be raised prior to trial, see Fed.R.Crim.P. 12(b)(3) [now Rule 12(b)(3)(C)], and that a court may set a deadline for the filing of such motions, see Fed.R.Crim.P. 12(c). Failure to file such motion by the deadline may be deemed a waiver.  See Fed.R.Crim.P. 12(f) [now Fed.R.Crim.P. 12(e)].  See United States v. Mancillas, 183 F.3d 682, 703 (7th Cir. 1999) (upholding

reliable, having been testified to by two separate law enforcement officers who were present when the statements were made.

Sliney's final due process claim -- that he was denied due process where his trial counsel "did not know the law"[16] and "could not protect his constitutional or other rights" -- is nothing more than a reiteration of his ineffective assistance counsel claims and as such, has effectively been addressed elsewhere in this Memorandum and Order.  See supra at 10-20.

The Court has reviewed Sliney's other arguments and claims and finds them to be without merit.

## CONCLUSION

In view of the foregoing considerations, the instant motion to vacate sentence pursuant to 28 U.S.C. § 2255 is hereby DENIED and dismissed.

So Ordered:

_Mary M. Lisi_
Mary M. Lisi
United States District Judge
September 12, 2006

---

denial of untimely oral motion to suppress, deeming such motion waived); United States v. Knezek, 964 F.32 394, 397-399 (5th Cir. 1992) (same).

[16]    Sliney's contention that trial counsel "did not know the law" (Pet. Memo at 38-39) is based on an exchange between defense counsel and the Court in the bench conference that occurred during the direct examination of the Government's first witness.  During that conference Attorney Murphy stated that he did not know of the Government's intended use of Sliney's statement at arrest, as none of the statements were contained in the police reports or other papers that counsel had received in state court discovery.  The Court then stated, "You should have attacked it in a pretrial motion. Under the rules you have to do that pretrial." – to which counsel responded, "If I knew that, Judge, I would have." (See 6/6/01 Tr. at 25.)  The colloquy then focused on the Government's attorney's reference to the statement at the pretrial detention hearing. (Id. at 25-26.)  In context, counsel's statement ("if I knew that") referred, at that point, to his lack of knowledge of the Government's intended use of Sliney's statement at trial, rather than his unfamiliarity with the rules of procedure.